**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| Curcio Webb LLC, : | |
| : | Case No. C2-03-559 |
| Plaintiff, : | |
| : | |
| v. : | Judge Marbley |
| : | Magistrate Judge King |
| National Benefit Programs Agency, Inc., : | |
| : | |
| Defendant. : | |

**PLAINTIFF CURCIO WEBB LLC'S
MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Curcio Webb LLC ("Curcio Webb") hereby moves for summary judgment against Defendant, National Benefit Programs Agency, Inc. ("NBP"), on all counts of Curcio Webb's Complaint.  The evidence compiled in this case demonstrates, without a doubt, that NBP:

- procured an electronic copy of a confidential, copyrighted form that Curcio Webb had designed to help offer consulting services;

- copied the form;

- replaced Curcio Webb's name and insignia with its own;

- changed a few words and phrases; and then

- used the form to offer the same kind of consulting services Curcio Webb offers.

By doing this – all without Curcio Webb's knowledge or permission – NBP knowingly and willfully infringed Curcio Webb's copyright, misappropriated its trade secrets, and violated Curcio Webb's rights under the Lanham Act.  For these actions, summary judgment on the issue of NBP's liability is unquestionably warranted.

A Memorandum in Support of this Motion, including an affidavit and evidence proving NBP's wrongdoing, is attached.

1

2

Respectfully submitted,

/s/ *Joseph W. Ryan, Jr.*
_____
Joseph W. Ryan, Jr.  (0023050)
Porter, Wright, Morris & Arthur
41 South High Street
Columbus, OH  43215
Phone: (614) 227-2244
E-mail: jryan@porterwright.com

Trial Attorney for Plaintiff,
Curcio Webb LLC

Of counsel:

Karen K. Hammond (0063293)
Eric B. Gallon (0071465)
Porter, Wright, Morris & Arthur
41 South High Street
Columbus, Ohio  43215
Phone: (614) 227-2182
E-mail: khammond@porterwright.com
         egallon@porterwright.com

**MEMORANDUM IN SUPPORT**

**I.  INTRODUCTION AND INCONTROVERTIBLE FACTS**

The facts of this case are simple.  The Plaintiff, Curcio Webb, is an employee benefits and human resources consultant.  Among other services, Curcio Webb helps companies select providers to administer the companies' health, payroll, and other employee benefit plans.[1]  In March of 2001, Curcio Webb designed a confidential, 28-page document titled "Health & Welfare Delivery Services Request for Proposal"[2] to help one of its clients find a company to which it could outsource the administration of its employee benefit plans.[3]  Curcio Webb has continually improved and refined its forms over many years and expended significant time, effort, and expense in preparing this particular Request for Proposal.[4]

To protect this investment of time, effort, and expense, Curcio Webb put a copyright notice on each page of the Request for Proposal.[5]  (The copyright has since been registered with the United States Copyright Office.)[6]  The Request for Proposal also contains a clear notice that "[t]he work products produced by Curcio Webb for this search are considered proprietary" to both Curcio Webb and its client.[7]

Nonetheless, the Defendant, NBP, copied Curcio Webb's document to create NBP's "Health & Welfare Benefits Administration Request for Information"[8] – and NBP admits it:

---

[1] Affidavit of Gordon Webb ("Webb Affidavit") (attached as Exhibit 1) at ¶ 3.

[2] *See* Complt. (doc. # 1) (June 19, 2003) Ex. A.

[3] Webb Affidavit at ¶ 6.

[4] *See* Webb Affidavit at ¶ ¶ 9-13; *see also* time sheets showing time billed for drafting the Request for Proposal (CW-0040 and –0047) (attached as Exhibit 2).

[5] *See* Complt. Ex. A at *passim.*

[6] *See* Complt. Ex. C.

[7] Complt. Ex. A at 5.

[8] *See* Complt. Ex. B.

3

> Q   So what you did was you took the Curcio Webb proposal in electronic form and cut and pasted portions of that in to what became the document that you sent out on behalf of Caterpillar; is that true?
>
> A   That's true. Yes.[9]

Not only did NBP copy Curcio Webb's Request for Proposal, they left behind evidence of their theft – an embedded e-mail in the Word version of NBP's Request for Information that reads "JConcheck@NBPGlobal.com," but actually sends an e-mail to Curcio Webb partner Jamie Curcio when "clicked."[10]

Even without NBP's admissions and the "electronic evidence" of its theft, the similarities between Curcio Webb's Request for Proposal and NBP's Request for Information are obvious and undeniable. The typeface and design of the documents is similar:



---

[9] Deposition of Joseph Concheck ("Concheck Depo.") (doc. # 30) (Mar. 14, 2005) (excerpts attached as Exhibit 3) at 37:25 – 38:4; *see also* Defendants' Responses and Objections to Plaintiff Curcio Webb LLC's First Set of Requests for Admission ("NBP's First RFA Responses") (attached as Exhibit 5) at ¶¶ 2, 4, and 5 (admitting that NBP prepared NBP's Request for Information and copied text from Curcio Webb's Request for Proposal into it).

[10] *See* Concheck Depo. at 38:14 - :18, 104:13 - :16.

4

The organization is the same:




NBP's Vice President, Kenneth Perry, has admitted that the Description of Services table that takes up almost a quarter of NBP's Request for Information is "practically identical" to the Scope of Services table in Curcio Webb's Request for Proposal.[11]  And, as NBP President Joseph Concheck has admitted, "several sections of [NBP's Request for Information] contain text that's virtually identical to text in [Curcio Webb's document]."[12]  Examples of NBP's plagiarism include:

---

[11] Deposition of Kenneth Perry ("Perry Depo.") (doc. # 28) (Mar. 14, 2004) at 42:7 – 43:2 (excerpts attached as Exhibit 4); *see also id.* at 26:23 – 27:7.  *Compare* Complt. Ex. A at 9-22 (Curcio Webb's Scope of Services table) and Complt. Ex. B. at 13-26 (NBP's Description of Services table).

[12] Concheck Depo. (Exhibit 3) at 115:20 - :23.

5

## INTRODUCTION

If customer service remains in-house, ▇▇▇ will require update access to administration systems to provide this service.

Curcio Webb has been retained by ▇▇▇ to assist in the provider selection process. It is our goal to select a health and welfare administration provider for ▇▇▇ by May 4, 2001.

## REQUEST FOR PROPOSAL

This document is a formal RFP, which specifies the pertinent objectives and requirements for the selection of a qualified company to provide health and welfare plan administrative services. The purpose of this RFP is to obtain competitive proposals from experienced providers to administer the services for ▇▇▇.

The Scope of Services section has been compiled to detail a minimum requirement for what services will be required. It is ▇▇▇ intentions to include a revised Scope of Services document in the final contract (which finalists will receive at a later date).

## CONTACT PERSONS

Address all inquiries concerning this RFP to the contact person listed below.

Jamie L. Curcio
Curcio Webb, LLC
1130 Lake Cook Road, Suite 175
Buffalo Grove, IL 60089
Phone: (847) 279-7341
Fax: (847) 279-0535
jcurcio@curciowebb.com

Do not contact ▇▇▇ staff regarding this project.

## PROPOSAL SUBMISSION

All proposals must be delivered to ▇▇▇ and Curcio Webb by 4:00 pm CT on Monday, April 2, 2001, to be considered for evaluation.

Please type and submit five (5) copies of *all* text material comprising the entire proposal.

---



## INTRODUCTION

National Benefit Programs is assisting ▇▇▇ in the RFI process. It is the goal of ▇▇▇ to conduct a formal health and welfare administration RFP based on the RFI findings.

## REQUEST FOR INFORMATION

This document is a formal RFI, which specifies the pertinent objectives and requirements for the selection of a qualified company to provide health and welfare benefit plan administrative services. The purpose of this RFI is to obtain competitive proposals of service from experienced providers to administer Health & Welfare Administration services for ▇▇▇.

The Description of Services section has been compiled to detail a minimum requirement for what services will be required. It is ▇▇▇ intentions to include a revised Description of Services document in the formal RFP and contract for services (which finalists will receive at a later date).

## CONTACT PERSONS AND RFI MAILING ADDRESSES

Address all inquiries concerning this RFI to the contact persons listed below.

Joseph Concheck and Kenneth Perry (2 copies and electronic)
National Benefit Programs, Inc.
1207 Grandview Avenue
Columbus, OH 43212
Tel: (614) 481.9000
Fax: (614) 481.8716
JConcheck@NBPGlobal.com
KPerry@NBPGlobal.com

Do not contact ▇▇▇ staff regarding this RFI.

## INTRODUCTION

Submit three (3) copies to:

Benefits Director

Submit two (2) copies to Jamie Curcio at her address listed on the previous page. An electronic copy of your proposal should be emailed to Jamie Curcio at the email address listed on the previous page.

▅▅▅▅ will not be obligated for the expenses of any provider arising out of preparation and/or submittal of proposals in response to this RFP.

Please return with your proposal a cover letter identifying the names of individuals authorized to negotiate with ▅▅▅▅ and the signature of an authorized individual confirming the proposal response.

### PROVIDER SELECTION

▅▅▅▅ shall determine selection of the successful provider in their sole discretion. ▅▅▅▅ reserves the right:

- To select any particular provider's proposal
- To select any portions of a particular provider's proposal for further consideration
- To accept a proposal other than the lowest cost proposal submitted, or
- To reject any and all proposals received if such action is considered to be in the best interests of ▅▅▅▅

▅▅▅▅ expects that the successful provider(s) will begin providing services, starting with project planning, on or about May 7, 2001.

The provider(s) that is (are) judged to offer the most attractive program on the basis of the overall evaluation, in its sole and absolute discretion, will be selected for nomination.

Although ▅▅▅▅ reserves the right to conduct site visits in a different manner, the current expectation is that only finalists will be visited during the week of April 16, 2001. Based on the proposals, providers deemed to have the best possibility of ultimately being selected would be included as a finalist. There is no predetermined number of providers who will be included as finalists.



CURCIO•WEBB
Copyright © 2001 Curcio Webb, LLC

## INTRODUCTION

### PROPOSAL SUBMISSION

*All proposals must be delivered to ▅▅▅▅ and National Benefit Programs by 4:00 pm CT on Wednesday, November 13, 2002, to be considered for evaluation.*

Please type and submit six (6) copies of *all* text material comprising the entire proposal. Four (4) formal binder proposals will be sent to ▅▅▅▅ personnel and two (2) formal binder proposals will be retained by National Benefit Programs. Additionally, the formal RFI will be sent to ▅▅▅▅ and NBP personnel via electronic mail in Microsoft Word or Excel format.

▅▅▅▅ will not be obligated for the expenses of any provider arising out of preparation and/or submittal of proposals in response to this RFI.

Please return with your proposal a cover letter identifying the names of individuals authorized to negotiate with ▅▅▅▅ and the signature of an authorized individual confirming the proposal response.

### HEALTH AND WELFARE (H&W) PROVIDER SELECTION

▅▅▅▅ shall determine selection of the successful RFI H&W providers in their sole discretion. ▅▅▅▅ reserves the right:

- To select any particular H&W provider's RFI proposal to receive the formal RFP.
- To select any portions of a particular H&W provider's proposal for further consideration,
- To accept a proposal other than the lowest cost proposal submitted, or
- To reject any and all proposals received if such action is considered to be in the best interests of ▅▅▅▅

For the purposes of the RFI discovery process, ▅▅▅▅ expects that the successful H&W provider(s) will begin providing services, starting with project planning, on or about February 1, 2003.

The H&W provider(s) that is (are) judged to offer the most competitive offer on the basis of the overall evaluation, in its sole and absolute discretion, will be selected to receive the formal RFP.

Although ▅▅▅▅ reserves the right to conduct site visits in a different manner, the current expectation is that only finalists selected through the formal RFP solicitation will be visited in January 2003. Based on the RFI proposals, H&W providers deemed to have the best possibility of ultimately being selected would be included to respond to the formal RFP. There is no predetermined number of providers set to receive the formal RFP.

National Benefit Programs

## INTRODUCTION

Details regarding the length of each visit will be determined and communicated to providers in early April 2001. Agendas for each will be provided only to those providers invited to participate.

### CONTRACTUAL REQUIREMENTS

This RFP is not intended to constitute an offer or binding agreement to negotiate or consummate a contract between ▇▇▇ and any provider relating to the services proposed, nor is it an agreement to enter into a binding agreement and should not be regarded as imposing any obligation or liability on ▇▇▇. Any legal obligations between the parties shall be noted in an executed contract. ▇▇▇ reserves the right to refuse any offer made to it, at its sole discretion.

By submitting a proposal, a provider is agreeing to be bound by the terms and conditions, specifications, and provisions stated herein, including those in the appendices attached hereto. In the event of conflict between the terms and conditions in the provider's proposal and those contained in this RFP, the terms and conditions of the RFP shall control.

### USE OF INFORMATION

Any specifications, drawings, sketches, models, samples, tools, computer or other apparatus programs, technical or business information or data, written, oral or otherwise (all hereinafter designated "Information") furnished to any third party unrelated to ▇▇▇ under this RFP or in contemplation of this RFP shall remain ▇▇▇ property. All copies of such Information in written, graphic or other tangible form shall be returned to ▇▇▇ at ▇▇▇ request. Unless such Information was previously known to such third party free of obligation to keep it confidential, or has been or is subsequently made public by ▇▇▇ or an authorized third party, it shall be kept confidential by the recipient. Such Information shall be kept confidential by the recipient in responding to this RFP, and may not be used for any other purposes except upon such terms as may be agreed upon between the recipient and ▇▇▇ in writing.

Providers shall not provide under or have provided in contemplation of this RFP any idea, data, program, technical, business or other intangible information, however conveyed, or any document, print, tape, disc, semiconductor memory or other information - conveying tangible article unless you have the right to do so, and you shall not view any of the foregoing as confidential or proprietary.

All Information furnished by any provider to ▇▇▇ under this RFP or in contemplation of a contract shall be considered by ▇▇▇ to be the provider's property. All providers acknowledge that the Information provided in response to this RFP will not be returned, unless requested by such provider and at such provider's expense. Unless such Information was previously known to ▇▇▇ free of obligation to keep it confidential, or has been or is subsequently made public by provider or an authorized third party, it shall

4  CURCIO ◆ WEBB
Copyright © 2001 Curcio Webb, LLC

---

## INTRODUCTION

### CONTRACTUAL REQUIREMENTS

This RFI is not intended to constitute an offer or binding agreement to negotiate or commence a contract between ▇▇▇ and any provider relating to the services proposed, nor is it an agreement to enter into a binding agreement and should not be regarded as imposing any obligation or liability on ▇▇▇. Any legal obligations between the parties shall be noted in an executed contract. ▇▇▇ reserves the right to refuse any offer made to it, at its sole discretion.

By submitting a proposal, a H&W provider is agreeing to be bound by the terms and conditions, specifications, and provisions stated herein, including those in the appendices attached hereto. In the event of conflict between the terms and conditions in the H&W provider's proposal and those contained in this RFI, the terms and conditions of the RFI shall control.

### USE OF INFORMATION

Any specifications, models, samples, tools, computer or other apparatus programs, technical or business information or data, written, oral or otherwise (all hereinafter designated "Information") furnished to any third party unrelated to ▇▇▇ under this RFI or in contemplation of this RFI shall remain the property of ▇▇▇. All copies of such Information in written or electronic form shall be returned to ▇▇▇ at ▇▇▇ request. Unless such Information was previously known to such third party free of obligation to keep it confidential, or has been or is subsequently made public by ▇▇▇ or an authorized third party, it shall be kept confidential by the recipient. Such Information shall be kept confidential by the recipient in responding to this RFI, and may not be used for any other purposes except upon such terms as may be agreed upon between the H&W provider and ▇▇▇ in writing.

H&W Providers shall not provide under or have provided in contemplation of this RFI any idea, data, program, technical, business or other tangible information, however conveyed, or any document, print, electronic media, hardware memory/storage or other information - conveying tangible information to ▇▇▇ or NBP.

All Information furnished by any H&W provider to ▇▇▇ under this RFI or in contemplation of a contract shall be considered by ▇▇▇ to be the H&W provider's property. All H&W providers acknowledge that the Information provided in response to this RFI will not be returned, unless requested by such H&W provider and at such H&W provider's expense. Unless such Information was previously known to ▇▇▇ free of obligation to keep it confidential, or has been or is subsequently made public by H&W provider or an authorized third party, it shall be kept confidential by ▇▇▇. Such Information shall be kept confidential by ▇▇▇ and NBP in evaluation of H&W

National Benefit Programs
7

## QUESTIONNAIRE

1. Provide the name, title, address, telephone, and fax number for the person submitting this proposal.

   Company _____
   Name _____ Title _____
   Address _____
   Telephone _____ Fax _____
   Email _____

2. Briefly describe your organization. Include the following:
   a. Business background and history
   b. Ownership structure
   c. Subsidiary relationships
   d. Alliance relationships
   e. Number of years in business
   f. Number of employees
   g. Annual revenue associated with health and welfare plan administration services
   h. Percent of revenue dedicated to health and welfare plan administration services

3. List all circumstances, liabilities and claims for which you will indemnify ▮▮▮ in connection with damages, fees, liabilities, costs, injuries, or other expenses associated with the outsourcing agreement, claims arising therefrom, or as a result of your relationship with ▮▮▮. What are your indemnification liability limits?

4. Describe your previous experience with ▮▮▮

5. Please provide a description of the department and include biographies for the people who would have primary responsibility for ▮▮▮ both during implementation and for all ongoing administration services. Include an organization chart.
   a. Describe the team members who would be assigned to the account by name, job title and responsibilities.
   b. Who will have primary transition responsibilities? Describe the experience and length of time in this position. How many other conversions (all areas) will this person be managing between April 2001 and January 2002? What is the maximum number of conversions per team?
   c. What do you do to ensure staffing continuity between conversion and ongoing administration?

23
Copyright © 2001 Curcio Webb, LLC
CURCIO ♦ WEBB

---

## QUESTIONNAIRE - Background and Service Support - I

The information contained in this questionnaire is important and will be used to evaluate your proposal. Be certain that all questions are answered completely and accurately. Include the questions in your response. If you are selected after the formal RFP process to provide Health and Welfare administration for the ▮▮▮ Active and Retiree Health and Welfare benefit plans, your responses to the questions and the Request for Information will be considered part of your contractual responsibilities.

1. Provide the name, title, address, telephone, and fax number for the person submitting this proposal.

   Company _____
   Name _____ Title _____
   Address _____
   Telephone _____ Fax _____
   Email _____

2. Briefly describe your organization. Include the following:
   a. Business background and history
   b. Ownership structure
   c. Subsidiary relationships
   d. Alliance relationships
   e. Number of years in business
   f. Number of employees
   g. Annual revenue associated with health and welfare plan administration services
   h. Percent of revenue dedicated to health and welfare plan administration services

3. List all circumstances, liabilities and claims for which you will indemnify ▮▮▮ in connection with damages, fees, liabilities, costs, injuries, or other expenses associated with the outsourcing agreement, claims arising therefrom, or as a result of your relationship with ▮▮▮. What are your indemnification liability limits?

National Benefit Programs
28

Most importantly, NBP has admitted that it did not have Curcio Webb's permission to copy text from Curcio Webb's Request for Proposal.[13] NBP has also admitted that it did not inform recipients of NBP's Request for Information that NBP had copied text from Curcio Webb's Request for Proposal.[14]

**II.     LAW AND ARGUMENT**

Under Rule 56 of the Federal Rules of Civil Procedure, the courts may grant summary judgment on liability alone where the movant establishes, through "the pleadings, depositions, answers to interrogatories, [ ] admissions on file, [and] affidavits, if any, … that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[15] While "the evidence must be viewed in the light most favorable to the nonmoving party[,]" "the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party."[16] Here, there is no genuine issue as to any material fact, and Curcio Webb is unquestionably entitled to judgment on its claims.

---

[13] *See* Defendants' Supplemental Responses and Objections to Plaintiff Curcio Webb LLC's First Set of Requests for Admission to Defendant National Benefit Programs Agency, Inc. ("NBP's Supp. RFA Responses") (attached as Exhibit 6) at ¶¶ 14-15; *see also* Concheck Depo. at 115:24 – 116:1 (Exhibit 3).

[14] *See* NBP's Supp. RFA Responses (Exhibit 6) at ¶ 16, referencing NBP's First RFA Responses (Exhibit 5) at ¶¶ 1 and 4.

[15] Fed.R.Civ.P. 56(f).

[16] *Desanzo v. Titanium Metals Corp.*, 351 F. Supp. 2d 769, 2005 U.S. Dist. LEXIS 653, at *12-13 (S.D. Ohio 2005), citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59 (1970), *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986), *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir. 1995), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986).

### A. NBP'S UNAUTHORIZED USE OF CURCIO WEBB'S WORK IS QUINTESSENTIAL COPYRIGHT INFRINGEMENT

A copyright infringement claim has only two basic elements: "a plaintiff must establish that he or she owns the copyrighted creation, and that the defendant copied it."[17] The plaintiff must also prove that the copied work was "original,"[18] which simply means "that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."[19] These elements are clearly met here.

Curcio Webb has a registered copyright for the Request for Proposal.[20] Thus, under recent Sixth Circuit precedent, the "ownership" and "originality" requirements for Curcio Webb's copyright infringement claims are "presumptively established."[21] The attached affidavit of Gordon Webb, one of the two partners of Curcio Webb, affirms that the Request for Proposal is the original work of Curcio Webb.[22] And while "[d]irect evidence of copying is rare,"[23] the Court has such evidence here; NBP has admitted copying text from Curcio Webb's Request for Proposal.[24] Indeed, as the examples above show, large portions of NBP's Request for Information are nearly identical to Curcio Webb's Request for Proposal. This is all the law requires. Curcio Webb is entitled to summary judgment on its copyright infringement claim against NBP.

---

[17] *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003), citing *Wickham v. Knoxville Int'l Energy Exposition, Inc.*, 739 F.2d 1094, 1097 (6th Cir. 1984*); see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.") (citation omitted).

[18] *Kohus*, 328 F.3d at 853, quoting *Feist Publ'ns, Inc.*, 499 U.S. at 361.

[19] *Feist Publ'ns, Inc.*, 499 U.S. at 345, citing 1 M. Nimmer & D. Nimmer, COPYRIGHT §§ 2.01[A], [B] (1990).

[20] *See* Complt. Ex. C.

[21] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004).

[22] *See* Webb Affidavit (Exhibit 1) at ¶¶ 8 and 12.

[23] *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999).

[24] *See* NBP's First RFA Responses (Exhibit 5) at ¶¶ 4 and 5.

**B.      NBP'S UNAUTHORIZED USE OF CURCIO WEBB'S WORK VIOLATES THE LANHAM ACT**

Curcio Webb's second and fourth claims are brought under the Lanham Act, 15 U.S.C. § 1125. The Lanham Act "covers … a host of … deceptive practices that might loosely be termed 'unfair competition[,]'" one of which "is the false designation of origin."[25] The statute states:

> Any person who, on or in connection with any goods or services, … uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin … which [ ] is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, …shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.[26]

A "false designation" claim requires proof of two elements: (1) "substantial economic effect on interstate commerce" and (2) "a likelihood of confusion."[27] "Although the jurisdictional interstate commerce element is necessary, '"likelihood of confusion is the essence of an unfair competition claim."' "[28] Curcio Webb's claim against NBP easily fulfills these requirements.

The interstate nature of this litigation is clear. Curcio Webb is an Illinois corporation with offices in Stamford, Connecticut; Pennington, New Jersey; Buffalo Grove, Illinois; and San Francisco, California; it does business all throughout the United States.[29] NBP is an Ohio corporation with its principal place of business in Columbus, Ohio, and conducts business

---

[25] *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998).

[26] 15 U.S.C. § 1125(a)(1)(A).

[27] *Johnson*, 149 F.3d at 502, citing *Lyon v. Quality Courts United, Inc.*, 249 F.2d 790, 795 (6th Cir. 1957); *see also Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.,* 326 F.3d 687, 694 (6th Cir. 2003) (citations omitted) ("to succeed on a false designation of origin claim, a plaintiff must show that the false designation creates a 'likelihood of confusion.'").

[28] *Johnson*, 149 F.3d at 502, quoting *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1123 (6th Cir. 1996) (other citations omitted); *see also AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 791-92 (6th Cir. 2004) ("The essence of a trademark or tradename infringement claim brought pursuant to 15 U.S.C. § 1114(1) is 'whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.' …. The unfair competition claim entails the same analysis.") (internal cites omitted).

[29] *See* Webb Affidavit (Exhibit 1) at ¶¶ 1, 4, and 5.

throughout the United States.[30] NBP distributed the Request for Information at issue in this litigation to between six and eight different providers, including SHPS, which has its headquarters in Louisville, Kentucky.[31] By stealing Curcio Webb's work and circulating it throughout the country as NBP's own, NBP has undercut Curcio Webb's business nationally. This more than satisfies the "interstate commerce" requirement for Lanham Act claims.[32]

The "likelihood of confusion" element of Curcio Webb's Lanham Act claims is also easily met. The Sixth Circuit affirmed a false designation claim in similar circumstances several years ago in *Johnson v. Jones.* There, an architect named Daniel Tosch took another architect's drawings, removed that architect's name and seal, replaced them with his (Tosch's) own, and passed them off as his own work.[33] In such a case, the Sixth Circuit held, finding a likelihood of confusion was simple:

> The present case is slightly different from the run-of-the-mill Lanham Act case, and, as it happens, much simpler. Here, the defendant has not produced a product to which he has applied a mark so like the plaintiff's that the public is likely to believe that the product was produced by the plaintiff. Rather, the defendant has taken the plaintiff's product and has represented it to be his own work. It is difficult to imagine how a designation of origin of a product could be more false, or could be more likely to cause confusion or mistake as to the actual origin of the product. …. [I]t is obvious beyond dispute that by taking Johnson's name and seal off of the plans and replacing them with his own, Tosch intended for people to assume that the plans were his, and not Johnson's. Indeed, this Court is hard-pressed to imagine what effect these actions could possibly have other than to convince anyone who looked at the plans that they were Tosch's work. Few are the cases demonstrating a more obvious and imminent likelihood of confusion.[34]

---

[30] *See* Complt. ¶ 2; Answer (doc. # 5) (Sept. 8, 2003) ¶ 2.

[31] *See* Concheck Depo. at 85:9 - 87:18 (Exhibit 3); Defendants' Responses and Objections to Plaintiff's First Set of Interrogatories ("NBP's First Int. Responses") (attached as Exhibit 7) at ¶ 3.

[32] *See Johnson*, 149 F.3d at 502 (holding that where the defendant stole the work of the plaintiff, an architect licensed and working in three states, and circulated it as the defendant's own, "To the extent that this false designation hinders [the plaintiff']s ability to conduct his interstate architecture business, it affects interstate commerce.").

[33] *See id.*, 149 F.3d at 499.

[34] *Id.* at 503.

A recent Supreme Court case affirms that a claim for false designation of origin would "undoubtedly be sustained" in a case in which one company took another company's product, repackaged it, and sold it as its own.[35]

This is exactly what NBP did with Curcio Webb's Request for Proposal. NBP took Curcio Webb's document; stripped Curcio Webb's name (and copyright notice) from it; replaced Curcio Webb's name and insignia with NBP's own; modified the document slightly so it could be used for a different customer; and then passed it off as NBP's own.

To confuse matters even further, NBP left an embedded e-mail address for Curcio Webb in the text it copied from Curcio Webb's Request for Proposal. As a result, a person reading an electronic version of NBP's Request for Information and pointing his computer cursor at the e-mail address provided for NBP's President, Joseph Concheck,[36] will see a yellow, highlighted box providing the e-mail address of Curcio Webb partner *Jamie Curcio* instead.[37] Clicking on Joseph Concheck's e-mail address will cause an e-mail to be sent to Curcio Webb.[38]

This false suggestion of "affiliation, connection, or association" between NBP and Curcio Webb or, even worse, of the "sponsorship[ ] or approval" of NBP's services by Curcio Webb, is expressly prohibited by the Lanham Act.[39] Following the precedent set by the Sixth Circuit's decision in *Johnson v. Jones*, Curcio Webb is clearly entitled to judgment on its Lanham Act claims.

---

[35] *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31 (2003).

[36] *See* Complt. Ex. B at 5.

[37] *See* Concheck Depo. at 103:22 – 104:3 (Exhibit 3).

[38] *Id.* at 104:13 - :16.

[39] 15 U.S.C. § 1125(a).

### C. NBP'S UNAUTHORIZED USE OF CURCIO WEBB'S WORK CONSTITUTES MISAPPROPRIATION OF TRADE SECRETS

NBP's unauthorized use of Curcio Webb's Request for Proposal also constitutes misappropriation of trade secrets under Ohio law. Ohio statute defines a "trade secret" as:

Information … that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[40]

"Evidence of trade secret is shown by facts demonstrating the extent to which the information is known outside the business and the precautions that Plaintiff has taken to guard the secret nature of the information."[41] "Misappropriation," in turn, is defined as, among other things:

... use of a trade secret of another without the express or implied consent of the other person by a person who … [a]t the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired … was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use[.][42]

NBP's theft and use of Curcio Webb's Request for Proposal easily meets these definitions.

As stated above, Curcio Webb continually improves and refines its forms.[43] Curcio Webb has a Request for Proposal template that it has developed over time, based on its experience in serving clients in the marketplace, and it updates this template constantly based on

---

[40] Ohio Rev. Code § 1333.61(D).

[41] *De Boer Structures (U.S.A.) v. Shaffer Tent & Awning Co.*, 233 F. Supp. 2d 934, 947-48 (S.D. Ohio 2002); *see also Hoffmann-La Roche Inc. v. Yoder*, 950 F. Supp. 1348, 1357-58 (S.D. Ohio 1997) (citations omitted) ("The Ohio Supreme Court … has focused on the two requirements that now make up the heart of the Ohio Act: 'the extent to which information is known outside the business and the precautions taken to guard against the secrecy of the information.'").

[42] Ohio Rev. Code § 1333.61(B)(2)(b).

[43] *See* Webb Affidavit (Exhibit 1) at ¶¶ 9-10.

15

what it learns from visiting providers.[44] Curcio Webb works to stay up-to-date on "best practices" in the marketplace – the most efficient and best way that companies can accomplish plan administration tasks – and the most modern systems, technology, and administration services being provided by vendors in the marketplace.[45] Thus, the Request for Proposal that NBP copied represented the sum of Curcio Webb's knowledge, at the time the Request was drafted, about the best practices and technology available in the health and welfare benefit plan provider marketplace.[46] Curcio Webb believes that having this knowledge, and keeping it confidential to Curcio Webb, gave Curcio Webb a benefit over its competitors.[47] Thus, the Request for Proposal qualified as one of Curcio Webb's "trade secrets" – at least, until NBP obtained and used it.

To protect its investment of time, effort, and expense, Curcio Webb does not share its requests for proposal with any party outside the company except potential providers.[48] In addition, the Request for Proposal itself contains several indicia of confidentiality. Each page of the Request for Proposal bears a copyright notice.[49] The Request for Proposal specifically states that "[p]roviders and their employees are not permitted to use or distribute [the Request] … for any purposes other than for [Curcio Webb's] search [for a provider]."[50] The Request for Proposal also contains a clear notice that "[t]he work products produced by Curcio Webb for this search are considered proprietary" and that information received in conjunction with the Request

---

[44] *See* Webb Affidavit (Exhibit 1) at ¶ 9.

[45] *See id.* at ¶ 10.

[46] *See id.* at ¶ 11.

[47] *See id.* at ¶ 15.

[48] *See id.* at ¶ 14.

[49] *See* Complt. Ex. A at *passim.*

[50] *Id.* at 5.

for Proposal "shall be kept confidential[.]"[51] (Ironically, NBP copied this portion of the document as well.[52])

Despite all of this, NBP was able to gain Curcio Webb's trade secret "from or through a person who owed a duty to [Curcio Webb] to maintain its secrecy or limit its use[.]"[53] The potential providers to which Curcio Webb sent the Request for Proposal had "agree[d] to be bound by [its] terms and conditions" when they submitted proposals in response to the Request.[54] SHPS, however, violated this vow of confidentiality to Curcio Webb and passed the Request for Proposal on to NBP.[55] NBP took advantage of this breach of confidentiality and, without Curcio Webb's permission,[56] copied the Request for Proposal to create its own Request for Information.

Ohio law bars the misappropriation of trade secrets in order "to maintain the standards of commercial ethics and the encouragement of invention, as well as the protection of the substantial investment of employers in their proprietary information."[57] NBP ignored its ethical obligations under the law. Rather than develop its own expertise in the industry, NBP sought to take advantage of Curcio Webb's hard-won knowledge and wisdom. Rather than draft its own Request for Information, it convinced one of the providers with which Curcio Webb does business to give it a good "head start." For this violation of Ohio public policy and statute, the Court should find NBP liable for misappropriation of Curcio Webb's trade secrets.

---

[51] *Id.* at 4-5.

[52] *See* Complt. Ex. B at 7-8.

[53] Ohio Rev. Code § 1333.61(B)(2)(b).

[54] *See* Complt. Ex. A at 4.

[55] *See* Webb Affidavit (Exhibit 1) at ¶ 7 (affirming that SHPS responded to the Request for Proposal); NBP's First Int. Responses (Exhibit 7) at ¶ 3 (naming SHPS as NBP's source for Curcio Webb's Request for Proposal).

[56] *See* NBP's Supp. RFA Responses (Exhibit 6) at ¶¶ 14-15.

[57] *Alta Analytics, Inc. v. Muuss*, 75 F. Supp. 2d 773, 786 (S.D. Ohio 1999) (Marbley, J.), quoting *Valco Cincinnati, Inc. v. N & D Machining Service, Inc.*, 24 Ohio St. 3d 41, 48 (1986).

### III. CONCLUSION

Because there are no genuine issues of material fact, and because NBP's liability is established as a matter of law, Curcio Webb respectfully requests that this Court grant it summary judgment on NBP's liability for copyright infringement, violation of the Lanham Act, and misappropriation of Curcio Webb's trade secrets.

Respectfully submitted,

/s/ *Joseph W. Ryan, Jr.*
_____
Joseph W. Ryan, Jr.  (0023050)
Porter, Wright, Morris & Arthur
41 South High Street
Columbus, OH  43215
Phone: (614) 227-2244
E-mail: jryan@porterwright.com

Trial Attorney for Plaintiff,
Curcio Webb LLC

Of counsel:

Karen K. Hammond (0063293)
Eric B. Gallon (0071465)
Porter, Wright, Morris & Arthur
41 South High Street
Columbus, Ohio  43215
Phone: (614) 227-2182
E-mail: khammond@porterwright.com
         egallon@porterwright.com

18

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Motion for Summary Judgment on Liability has been served pursuant to the Court's CM/ECF system upon:

>David A. Campbell, III, Esq.
>dacampbell@vssp.com
>Douglas L. Rogers, Esq.
>dlrogers@vssp.com
>Vorys, Sater, Seymour & Pease LLP
>52 East Gay Street
>Columbus, Ohio 43216

on this 14th day of March, 2005.

>_/s/ *Eric B. Gallon*_